

**SIGNED this 30th day of August, 2011.**

_____
JOHN C. AKARD
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| *In re* | BANKR. CASE NO. |
|---|---|
| ANTHONY H. SCHOTT | 10-54276 |
| *Debtor* | |

| KULDIP NIJJAR<br><br>          *Plaintiff,*<br>v.<br><br>ANTHONY H. SCHOTT<br><br>          *Defendant.* | ADV. NO. 11-05030 |
|---|---|

### MEMORANDUM DECISION AND ORDER ON
### MOTION FOR SUMMARY JUDGMENT

Came on for consideration the foregoing matter. On March 7, 2011 the above-named plaintiff ("Nijjar") filed a complaint to determine dischargeability of debt against the above-named defendant/debtor ("Schott"). Schott filed a motion for summary judgment on April 15,

1

2011. The parties subsequently filed several rounds of pleadings, including objections and motions to strike summary judgment evidence. This decision addresses and resolves Schott's Motion for Summary Judgment (Docket No. 5) as well as Schott's Objection and Motion to Strike (Docket No. 14) and Motion to Strike Surreply and Objection to Motion for Leave (Docket No. 19).

### *The Pleadings*

1. Nijjar's Complaint to Determine Dischargeability of Debt

On April 7, 2011, Nijjar filed a complaint against Schott to determine the dischargeability of debt pursuant to sections 523(a)(3)(B), (a)(2), (a)(4) and (a)(6) of the Bankruptcy Code. Nijjar filed the complaint as an unscheduled creditor under section 523(a)(3)(B). The facts alleged in Nijjar's complaint are as follows:

In 2007, Nijjar and Schott entered into a contract for the development of certain property in Austin, Texas known as 6403 West Courtyard. Nijjar was to purchase the property, and Schott was to develop it in accordance with certain specifications. Nijjar maintains that Schott induced Nijjar to borrow considerable funds to purchase and develop the property by representing to Nijjar that any development would be in accordance with certain specifications agreed to in advance by the parties. Nijjar further maintains that Schott either failed to disclose the existence of an easement on the property that materially affected the costs of construction or failed to disclose the impact of the easement on the intended building specifications. Nijjar argues that Schott was intimately familiar with the property, as Schott owned the adjacent property at 6401 West Courtyard and had developed other properties in the area.

Nijjar asserts that he relied on Schott's representations regarding the property and the planned development in entering into the contract with Schott and in obtaining lender approval for the development of the property. Nijjar further states that his lender (IndyMac) originally approved the construction loan in accordance with the original specifications provided to the lender. Due to Schott's alleged misrepresentations and omissions regarding the existence of an easement, and the impact the easement would have on construction costs, Nijjar asserts that the cost of construction increased, preventing Nijjar from being able to complete the project in accordance with the specifications originally submitted to his lender. Nijjar states that because of this un-anticipated increase in costs, the lender denied Nijjar further access on his loan and ultimately foreclosed on the property.

On July 7, 2008, Schott filed suit against Nijjar and other defendants in state court for, among other things, breach of contract in connection with this development deal. Nijjar filed a counterclaim against Schott alleging, among other things, common law fraud, fraud in a real estate contract and violation of the Texas Deceptive Trade Practices Act ("DTPA"). Schott filed

for Chapter 11 on November 1, 2010, but he failed to notify Nijjar of his bankruptcy filing and failed to list Nijjar on his creditor matrix and schedules. Nijjar states that he did not become aware of Schott's bankruptcy filing until February 18, 2011. The court remanded the state law causes of action between Schott and Nijjar; only Nijjar's complaint to determine the dischargeability of debt is now before this court.

2. Schott's Motion for Summary Judgment

On April 15, 2011, Schott filed an answer to Nijjar's complaint and a motion for summary judgment. Schott requested summary judgment on Nijjar's non-dischargeability claims as well as all of Nijjar's underlying, remanded, state law claims against Schott. Because the state law claims have been remanded, this court will only address Schott's request for summary judgment with respect to Nijjar's non-dischargeability claims.

Schott's motion for summary judgment rests on the following underlying facts, as laid out by Schott: In April, 2007, Nijjar contracted with Schott's construction company, Reaching New Heights ("RNH"), to build a custom home that RNH had previously designed for the site. RNH had the building under contract and had paid $125,000 to the developer toward the purchase price for the site. Nijjar was to pay RNH $300,000 as a down payment on the project.

RNH had also obtained a survey of the property and had hired an architect to design the plans for the property. The architect prepared a footprint of the home on the lot. The footprint prepared by the architect did not encroach on any easements or set back lines. Schott maintains that the home could have been built as designed without encroaching on any easement.

Schott states that, in order to provide proof of the $300,000 down payment to his lender, Nijjar removed $100,000 from his bank account, obtained a cashier's check in that amount, and then re-deposited the money into his account. Schott asserts that Nijjar did this three times, providing copies of the checks to Nijjar's lender as proof that Nijjar had provided Schott with the down payment. Schott maintains that Nijjar stated that he would overnight the three checks to the title company. Schott further states that Nijjar admittedly failed to send the check as promised, allegedly on the advice of his mortgage broker. Nijjar never paid Schott the $300,000 down payment. Nonetheless, the closing on the property went forward as scheduled, and, per the lending instructions from Nijjar's lender, RNH assigned the building site to Nijjar.

Schott asserts that Nijjar signed numerous documents at closing acknowledging the existence of the easement on the lot. Nijjar also signed the construction loan agreement in which Nijjar agreed that the agreement represented the complete agreement between the parties and that Nijjar had not been induced to enter into the agreement by any representations. Schott further states that the contract acknowledges that Nijjar is an experienced real estate investor.

3

Schott states that RNH paid all the costs of engineering, surveying and designing the project. After closing, RNH repeatedly requested that Nijjar send the $300,000 down payment, and on July 31, 2007, RNH sent a demand letter to Nijjar after Nijjar continued to refuse to send the down payment. After closing, Schott states that RNH paid for a redesign of the home to accommodate a change requested by Nijjar. Nijjar wanted to add a pool to the site which had not been included in the original specifications. RNH paid for the re-design, permitting and engineering costs in an effort to satisfy Nijjar and make the deal work. Ultimately, on July 7, 2008, RNH and Schott filed suit against Nijjar for breach of contract, fraud, tortious interference with contractual relationship, conspiracy and negligent misrepresentation. Thereafter, Nijjar filed counterclaims against Schott and RNH for fraud, breach of contract and violation of the DTPA.

With respect to Nijjar's section 523(a)(2)(A) and (a)(6) claims, Schott maintains that the undisputed facts show that Nijjar has no evidence, or insufficient evidence, to establish the required elements for these non-dischargeability claims. Schott's motion for summary judgment makes reference to several pieces of summary judgment evidence; that evidence is discussed below.

Schott succinctly characterizes Nijjar's complaint as being based upon the following assertions: 1) "Schott failed to disclose the existence of an easement (or the impact of the easement on the intended building specifications)"; and 2) "Schott materially misrepresented that any development would be in accordance with certain specifications agreed to in advance by [the] parties." (Mot. Sum. J., p. 13.) Schott maintains that Nijjar has failed to establish the existence of a false representation as a matter of law.

First, regarding Nijjar's assertion that Nijjar was not aware of the existence and location of the public utility easement on the lot, Schott points to the following evidence to establish the absence of any genuine issue of material fact with respect to Nijjar's knowledge and awareness of the easement: 1) the survey and architectural footprint of the home (Ex. 6), the surveyor's field notes (Ex. 21), Declaration of Covenants, Conditions and Restrictions (Ex. 14), the Deed conveying the property to Nijjar (Ex. 13), the Title Policy provided by Alamo Title (Ex. 15), and the budget for the project that was provided to Nijjar's lender (Ex. 22).

Exhibit 6, the survey and architectural footprint of the home, shows the existence of the easement. Similarly, Exhibit 21, the surveyor's field notes, also establishes the existence of the easement. Exhibit 13, the deed conveying the property to Nijjar, makes only a general reference to 1) "[v]isible and apparent easements and all underground easements, the existence of which may arise by unrecorded grant or by use," and 2) [e]asements, rights-of-way, and prescriptive rights, whether of record or not…;" as listed exceptions to the deed. Exhibit 14, the Declaration of Covenants, Conditions and Restrictions, also mentions drainage and conservation easements. The declaration provides various restrictions on the use of such easements and states that each

owner covenants to provide easements for drainage and water flow "as the contours of land and the arrangement of improvements approved by the architectural committee require." The declaration itself does not provide any specific information regarding the locations of such easements within the subdivision; it does, however, reference the easements as "shown on the plat" attached to the declaration. Exhibit 15, the Alamo Title Policy, includes various drainage and public utility easements along various specific property lines, "as recorded in Volume 86, Page 155D, Plat Records of Travis County, Texas" as listed exceptions to coverage. Finally, Exhibit 22, which Schott represents constitutes the "plans and specifications" for the project (Mot. Sum. J., p. 15) does not reference the easement. Furthermore, this exhibit does not appear to constitute the "plans and specifications" for the project. Rather, Exhibit 22 appears to be the budget for the project. This budget is also reflected in Exhibit 5 to Schott's Reply, wherein Schott correctly describes the document as a "budget," not as plans and specifications.

Second, regarding Nijjar's assertion that the home could not have been built in accordance with the original specifications agreed to by the parties, Schott states:

> There is no evidence that the project was halted due to the easement. In fact, the project could have been completed as agreed upon in the contract and pursuant to the architectural plan RNH provided well in advance of closing. These plans were prepared by a licensed architect who utilized the survey prepared by a licensed surveyor in order to accurately depict the easements and set back lines. If the location of the easement had actually prevented the home from being built, the architect or surveyor would be responsible, not the building contractor. Schott already had a home designed by an architect and this original plan was the plan submitted to the lender. Nijjar wanted a change. That is contemplated in the construction contract. However, Nijjar specifically acknowledges that any costs due to changes would be absorbed by him. Further, Nijjar agrees to hold RNH harmless.

(Mot. Sum. J., p. 15-16.) Schott references the construction contract, Exhibit 8, in support of this argument. The construction contract does anticipate that the owner may make changes to the plans and specifications and that the cost of such changes shall be borne by the owner. This evidence does not address the issue of whether a pool was anticipated or included in the original plans.

Finally, regarding Nijjar's assertion that Schott knew of the existence of the easement and the impact it would have on the construction costs, but failed to disclose that information to Nijjar, Schott states:

> Nijjar decided after closing that he wanted a pool that was not included in the original plans submitted to the lender. RNH demanded the $300,000 down payment to begin

construction pursuant to the contract. Nijjar refused and RNH spent months attempting to resolve the matter outside the Courts. In good faith, RNH even paid additional money to have changes made to the plans after closing to satisfy Nijjar's request. Ultimately, RNH had to file suit.

Nijjar's claims that Schott was intimately familiar with the property are unfounded. RNH owned the adjacent lot but it had completely different easements and it had not begun construction on the adjacent lot and had no experience in that Subdivision.
The parties agreed in the construction contract that they were both experienced real estate investors.

Nijjar's claim that he did not know of an easement on the property is groundless and made in bad faith. Further, the easement did not interfere with the project and [Nijjar] has no evidence to support that contention. There is insurmountable evidence that the home as designed and submitted to the lender for approval could have been built. A surveyor established the easement and an architect designed the home on the lot. If there has been an issue with an easement, one of those professionals would be liable, not Schott.

Moreover, Nijjar's own discovery responses take an inconsistent position to his claim that Schott induced him into a contract. Nijjar states that the contract was annulled and that is why he did not pay the down payment. As such, he should not be heard to claim he was induced into the same contract.

(Mot. Sum. J., pp. 16-17.) Schott supports these assertions by referencing Exhibit 3 to his motion for summary judgment—an affidavit executed by Schott wherein Schott states, among other things, that: 1) he had never before built a home in the subdivision at issue here; 2) he had no knowledge of the easement on 6403 West Courtyard other than what was shown in the survey; 3) Schott retained an architect in 2006 to design the home; 4) Schott also retained a surveyor to aid the architect in designing the home; 5) the architect made sure that the home, as designed, would not encroach on any easement; 6) the home was not designed with a swimming pool; 7) the original budget submitted to Nijjar's lender shows that a pool was not included in the original plans; 8) Nijjar requested that a pool be added to the plans after the closing had taken place and submitted a revised budget that included those costs; 9) to accommodate Nijjar's request to add a pool, RNH redesigned, engineered and permitted the home at its own expense; and 10) after RNH performed this additional work, Nijjar failed to turn in the draws on the construction loan as promised. Schott also supports the above assertions by referencing Exhibit 23 to his summary judgment motion—Nijjar's discovery responses—wherein Nijjar states that the purchase contract between Schott and Nijjar (which contained the requirement that Nijjar make a $300,000 down payments) was annulled because Nijjar ultimately purchased the property directly from the developer. This exhibit speaks to Schott's breach of contract counterclaim against Nijjar, but it

does not speak to the issue of whether and/or when the construction of a pool may have been contemplated by the parties.

In sum, Schott maintains that the summary judgment evidence establishes that Nijjar was aware of the existence and location of the easement when he entered into the agreement with Schott; that the home could have been built in accordance with the original specifications agreed to by the parties; and that Schott, while perhaps aware of the existence of the easement, was not aware of, and thus did not fail to disclose, the impact the easement might have on construction costs. Schott asserts that the evidence establishes the absence of any genuine issue of material fact, negating Nijjar's contention that Schott made misrepresentations or failed to disclose material facts. Thus, argues Schott, Nijjar's claims under section 523(a)(2)(A) and 523(a)(6) must fail as a matter of law.

3.  Nijjar's Response to Schott's Motion to Summary Judgment

Nijjar filed a response to Schott's motion for summary judgment essentially re-asserting, with greater detail, and supported by summary judgment evidence, the allegations contained in Nijjar's complaint. Nijjar again argues that Schott misrepresented that the development of the property would be in accordance with certain agreed-to specifications and a fixed budget. Nijjar maintains that Schott failed to disclose that a pre-existing easement on the property would prevent construction of the project as originally represented by Schott, which representations included the construction of a pool. Nijjar states that once Schott changed the specifications (to accommodate the pool), Nijjar's lender suspended the loan, refused to allow further draws on the loan, and eventually foreclosed on the project.

Schott objected to much of the summary judgment evidence submitted by Nijjar. Accordingly, the court will address the admissibility of Nijjar's summary judgment evidence as it arises in his response. Nijjar maintains that "fact issues abound as to the nature of the parties' relationships, duties owed, and the knowledge and intent of the various actors as concerns the dispute made the basis of the litigation." (Resp., p. 4.) Nijjar provides the following factual assertions, contained in Nijjar's supporting affidavit and exhibits thereto, in support of his response to Schott's motion for summary judgment:

Schott negotiated for Nijjar to purchase 6403 West Courtyard from Mark Roper. Prior to Nijjar's execution of the contract with Roper, Schott assured Nijjar that the project would not exceed an agreed upon price. In April, 2007, prior to the closing of the property, FGM & Associates provided an appraisal of the property in connection with Nijjar's IndyMac loan application. Nijjar states that he believes Schott prepared the specifications attached to the appraisal or was aware of their existence. The appraisal and attached "specifications" include a pool. Nijjar asserts that, contrary to Schott's assertions in his affidavit, the original building

specifications always included a pool design. Nijjar further maintains that prior to the closing Nijjar confirmed with Schott that a pool would be part of the specifications, and that Schott was fully aware of the inclusion of a pool in the initial design. Nijjar also asserts that on April 29, 2007 (prior to closing), the real estate agent involved in this transaction provided Nijjar with a flyer that also indicated a pool. Nijjar maintains that his lender relied on the appraisal in making the loan to Nijjar.

First, Schott objects to those statements in Nijjar's affidavit concerning what Nijjar *believes* Schott did or did not do or know. The court agrees with Schott that such statements do not constitute proper summary judgment evidence. Affidavits used to support or oppose motions for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. *See* FED. R. CIV. P. 56(c). If an affiant expressly states in her affidavit that a certain statement was made on information and belief, such statement should be stricken as not based on personal knowledge. *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003). "Belief, no matter how sincere, is not equivalent to knowledge." *Carey v. Beans*, 500 F. Supp. 580, 583 (E.D. Pa. 1980) (on summary judgment, "statements [in an affidavit] prefaced by the phrases 'I believe' or 'upon information and belief' or those made upon an 'understanding' … are properly subject to a motion to strike"). Accordingly, the court will not consider such statements in evaluating Nijjar's response and summary judgment evidence. Second, Schott objects to Nijjar's assertion that he "confirmed" with Schott that the project would include a pool; Schott maintains that this statement contradicts other summary judgment evidence, namely the construction contract, which Nijjar references in his affidavit, which expressly supersedes all prior agreements. Schott's argument for excluding this statement is not well-taken. This evidence exposes the existence of a factual controversy. The construction contract incorporates the specifications for the project, so Nijjar's statements regarding the contents of those specifications do not actually contradict the contract terms and may be considered.[1] Schott also claims that this statement constitutes inadmissible hearsay. It does not. A statement is not hearsay if it is offered against a party and is that party's own statement, in either an individual or a representative capacity. FED. R. EVID. 801(d)(2); *United States v. Chaney*, 299 Fed. Appx. 447, 452 (5th Cir. 2008).

---

[1] Schott objects to numerous other representations made by Nijjar in his Response on the ground that such representations are contradicted by other summary judgment evidence in the record. Again, such contradiction merely raises a fact issue for trial. Schott's objections on this basis are not well-taken. While it is true that "when the only summary judgment evidence suggesting that there [is] a genuine issue of material fact [is] an affidavit by the nonmovant that directly contradict[s] his prior deposition testimony, with no legitimate explanation regarding the contradiction, the affidavit [is] not enough to raise a genuine issue of material fact and defeat the motion for summary judgment," *Blackshire v. Tyson Foods, Inc.*, 2010 U.S. Dist. LEXIS 84237, at *14 (E.D. Tex. Aug. 17, 2010), that is not the situation here. Schott's objections based on the existence of evidence that contradicts Nijjar's affidavit and the evidence attached thereto do not rely on contradictions with Nijjar's prior sworn testimony. Contradictory summary judgment evidence submitted by the parties (that is otherwise admissible) establishes the existence of a factual dispute for trial. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.").

Schott also objects to the admission of the appraisal, Exhibit A to Nijjar's affidavit, on the following grounds: 1) that the stated contract price on the first page of the appraisal is $400,000 more than the construction contract between the parties; 2) that the contract price on the appraisal is $1,000,000 more than the actual loan proceeds from IndyMac; 3) that there is no evidence that Schott was involved in, or even aware of, the preparation of the appraisal and attached "specifications;" and 4) that there is no evidence that Nijjar has personal knowledge of what IndyMac may have relied on in making the loan to Nijjar. The court has already found that any statements regarding what Nijjar believes Schott may or may not have known or done are inadmissible. Thus, Nijjar's statement that he believes Schott either prepared or knew about the specifications cannot be used to support Nijjar's opposition to summary judgment. *See Carey v. Beans*, 500 F.Supp. at 583. The contents of the appraisal and attached plans, however, are admissible. The fact that the appraisal contains different contract amounts than those contained in the construction contract and those approved by IndyMac merely goes to the weight of that evidence, not its admissibility. Regarding Schott's objection to Nijjar's assertions that IndyMac relied on the appraisal in approving Nijjar's loan, the court agrees that such conclusory assertions, without any factual support, cannot defeat a motion for summary judgment. Mere conclusory statements are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. Tex. 1985) ("[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment.").

Next, Schott objects to the admission of Exhibit B to Nijjar's affidavit on the grounds that David Owen, who provided this purported "flyer" to Nijjar, was Nijjar's agent, not Schott's, and that there is no evidence that Schott had anything to do with the flyer. Schott also claims that the font on the second page of the flyer is different from the font on the first page, and that the second page, which contains the pool specification, has duplicated information from the first page while adding the specification of the pool. Schott maintains that such details suggest that the second page of the flyer was added after the flyer was made. First, regarding the issue of whether David Owen acted on behalf of Nijjar or Schott, neither party has produced any evidence to answer this question. Schott did provide an affidavit, Exhibit 1 to his reply, wherein the real estate agent for Reaching New Heights maintains that she never provided any marketing materials, flyers or specifications to Nijjar, but that does not prove that Schott never had anything to do with the "flyer" received by Nijjar. Second, regarding the issue of authenticating the flyer, the requirement of authentication or identification is a condition precedent to the admission of evidence, which is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. FED. R. EVID. 901(a). In deciding questions of authenticity, courts do not require conclusive proof of authenticity before allowing the admission of disputed evidence. *United States v. Watkins*, 591 F.3d 780, 787 (5th Cir. 2009). The proponent

does not have to rule out all possibilities not consistent with authenticity; the standard is one of "reasonable likelihood." *United States v. Bright*, 630 F.2d 804, 819 (5th Cir. 1980). Evidence may be authenticated by testimony of a witness with knowledge that a matter is what it is claimed to be. FED. R. EVID. 901(b)(1); *United States v. McNealy*, 625 F.3d 858, 864 (5th Cir. 2010). To authenticate documents used to support a motion, a party must attach the documents as exhibits to an affidavit made by a person through whom the exhibits could be admitted into evidence at trial. *Perez v. Alcoa Fujikura, Ltd.*, 969 F. Supp. 991, 997 (W.D. Tex. 1997). To authenticate by affidavit, an affiant must affirmatively show that he has personal knowledge and "is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). Nijjar affirmatively states at the beginning of his affidavit that he has personal knowledge as to the facts declared in the affidavit; he discusses the contents of the flyer in his affidavit, and has attached the flyer to the affidavit as Exhibit B. "Questions as to the documents' content and completeness bear upon the weight to be accorded the evidence and do not affect the threshold question of authenticity." *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1376 (3d Cir. Del. 1991). Therefore, this evidence may be considered by the court in evaluating Nijjar's opposition to summary judgment. Lastly, Schott maintains that his summary judgment evidence, namely exhibit 4 to Schott's reply and exhibits 11 and 23 to Schott's summary judgment motion, establish that no specifications had been prepared at the time of closing. The court's own review of these exhibits did not reveal any support for Schott's assertions. Exhibit 4 to Schott's reply, a letter from David Owen, merely establishes that the wrong budget was initially submitted to IndyMac. Exhibits 11 and 23 (Nijjar's discovery responses) never even mention the specifications.

   Nijjar states that on May 24, 2007, Schott and Nijjar executed a construction contract, the terms of which "effectively superseded any prior agreement with Schott regarding the acquisition and/or development of the property." After the execution of the contract, Nijjar states that he received an e-mail from Schott (Exhibit D to Nijjar's Response) indicating that there was a $200,000 difference between the loan amount requested and the amount of the actual loan. Nijjar maintains that Schott knew prior to the closing that the total funds available for the project would be the difference between the maximum loan amount of $1,685,000 and the acquisition price of $685,000, with a resulting construction budget of approximately $1,000,000. Nijjar states that he communicated with Schott that IndyMac had approved a total loan for approximately $1,685,000 for both the acquisition and development of the property. Nijjar maintains that the maximum loan amount was disclosed on the settlement statement and on the closing documents and lender instructions.

   Schott objects to the admission of Exhibit D on relevancy grounds. Evidence must be relevant to be admissible. FED. R. EVID. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Exhibit D is relevant

and admissible. It indicates that there was a $200,000.00 difference between the amount of the loan requested and the amount actually approved by IndyMac. This difference tends to show that the parties may have had different ideas about the costs of the project. Schott also objects to Nijjar's assertion that Schott knew prior to closing that the total funds available for the development of the property would be the difference between the maximum amount and acquisition price. If an affiant makes statements in his affidavit as to another person's knowledge, but fails to address how the affiant has personal knowledge of such awareness, then such statement does not comply with Rule 56(e)'s personal knowledge requirement. *See Jenkins v. The Heritage Org. (In re The Heritage Org.)*, No. 04-35574-BJH-11, 2007 WL 2964255, at *6, n.6 (Bankr. N.D. Tex. Oct. 8, 2007) (unpublished) (holding that one party's assertion in his affidavit that the other party knew about all of the first party's actions and/or statements was not made on personal knowledge because the first party failed to address how he had personal knowledge of the second party's awareness). Accordingly, Nijjar's statements regarding what Schott knew, absent evidence of Nijjar's personal knowledge of Schott's awareness, are inadmissible.

Next, Nijjar states that on May 25, 2007, Nijjar entered into a purchase contract with Roper whereby Nijjar purchased 6403 West Courtyard for $685,000. Nijjar states that Schott helped negotiate this purchase with the understanding that Schott would be developing the property. Nijjar further states that Schott understood that Nijjar would not be tendering any non-borrowed funds for the purchase and development of the property. Nijjar also maintains that he purchased the property with the understanding that Schott would pay any amount in excess of the loan funds authorized by IndyMac.

Schott first objects to Nijjar's "bare allegation" that Schott helped him negotiate the purchase of the property from Roper. Schott claims that the statement is inconsistent with the fact that all three parties to the transaction had their own agents. Schott also claims that the statement is not relevant to Nijjar's argument. The court will admit this statement as competent, relevant summary judgment evidence. It tends to support Nijjar's argument that Schott had certain duties to Nijjar with respect to this real estate deal. Schott also objects to Nijjar's statement to the effect that Schott knew Nijjar would not be tendering any non-borrowed funds for the purchase and development of the property. As noted above, such statements regarding another person's knowledge, without any evidence of how the affiant came to be aware of such other person's knowledge, are inadmissible. *In re Heritage Org.*, No. 04-35574-BJH-11, 2007 WL 2964255, at *6, n.6. Finally, regarding Schott's objection to Nijjar's statement that it was Nijjar's understanding when he purchased the property that Schott would pay any amount in excess of the loan funds authorized by IndyMac, this statement is also not competent summary judgment evidence. *See Carey v. Beans*, 500 F. Supp. 580, 583 (E.D. Pa. 1980) (on summary judgment, "statements [in an affidavit] prefaced by the phrases 'I believe' or 'upon information and belief' or those made upon an 'understanding' … are properly subject to a motion to strike").

Nijjar states that on June 13, 2007, IndyMac paid Schott the first draw in the amount of $144,401, but that Schott failed to obtain the requisite building permit to commence construction. Thereafter, states Nijjar, Schott informed Nijjar that the presence of the drainage easement on the property precluded issuance of the permit. Schott told Nijjar that new specifications would need to be submitted to obtain the permit. Nijjar states that on November 26, 2007, IndyMac suspended further loan draws for the property pending receipt of the building permit; and in December, 2007, Schott sent a letter to IndyMac (Exhibit E to Nijjar's affidavit) wherein Schott explained that the City of Austin had delayed issuance of the permit because of an easement and that Schott was therefore modifying the home specifications to avoid the easement. Nijjar states that Schott finally obtained the requisite building permit on February 5, 2008. Nijjar maintains that on February 19, 2008, after closing, Schott informed Nijjar of the need to increase both the square footage and cost of the house from the original specifications by approximately 1,000 square feet and $367,500, respectively. Nijjar states that Schott prepared a letter to this effect and sent it directly to IndyMac without Nijjar's permission. (*See* Exhibit F to Nijjar's affidavit.) Nijjar states that when IndyMac became aware of these cost increases, IndyMac demanded that Nijjar tender approximately $367,500 as a condition to further draws on the loan.

Schott objects to Nijjar's statements that, after closing, Schott informed Nijjar that 1) the presence of the drainage easement on the property precluded issuance of the permit; and 2) new specifications would need to be submitted in order to obtain the permit. Schott incorrectly argues that these statements constitute inadmissible hearsay. A statement is not hearsay if it is offered against a party and is the party's own statement, in either an individual or a representative capacity. Fed. R. Evid. 801(d)(2); *United States v. Chaney*, 299 Fed. Appx. 447, 452 (5th Cir. 2008). The statements in question are Schott's own statements and are offered by Nijjar to defeat Schott's motion for summary judgment; such statements fall within the party-opponent exception to the hearsay rule. Schott also objects to Nijjar's "conclusory" statement that IndyMac suspended further loan draws pending receipt of the building permit. Indeed, Nijjar failed to produce any evidence to support his conclusory claim that IndyMac suspended any further loan draws pending receipt of the building permit. Therefore this claim is not competent summary judgment evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

Schott also objects to Exhibit F to Nijjar's affidavit on the grounds that Nijjar fails to properly authenticate it and fails to state how he obtained the letter or how he knows that Schott generated this letter. Nijjar's affidavit states that "unless otherwise indicated, the facts set forth in this declaration are within my personal knowledge and are true and correct." Nijjar discusses the letter (which is attached to his affidavit) in the affidavit, stating that Schott requested his signature on the letter, and then mailed it to IndyMac without Nijjar's consent. Nijjar thus laid a sufficient foundation for introduction of the letter. *See Perez v. Alcoa Fujikura, Ltd.*, 969 F. Supp. 991, 997 (W.D. Tex. 1997) ("As a general rule, 'in order for a document to be considered

in support of or in opposition to a motion for summary judgment, it must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'").

Finally, Schott objects to Nijjar's assertion that after IndyMac first became aware of increased construction costs, IndyMac required Nijjar to tender $367,500 as a condition to further draws on the loan. Schott maintains that Nijjar failed to provide any evidence to support this conclusory assertion and that Nijjar's statement that IndyMac demanded the additional funds after it became aware of the increase in costs constitutes inadmissible hearsay. The court agrees that Nijjar's statement relaying what IndyMac may have said constitutes hearsay. *See* FED. R. EVID. 801.[2] Additionally, Nijjar's assertion that IndyMac demanded certain funds from Nijjar is impermissibly conclusory. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (stating that "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'").

Next, Nijjar asserts that, at the time of the execution of the purchase contract and prior to the closing of the property, Schott was aware of the drainage easement on the property and further knew that the easement would preclude the development of the property in accordance with the agreed-to specifications and budget. Nijjar maintains that Schott failed to disclose the impact of the easement inasmuch as it would require new specifications and would lead to an increase in construction costs. Nijjar states that he believes Schott simply desired to recoup his soft costs through the initial draw from IndyMac. These statements do not constitute proper summary judgment evidence. *See In re Heritage Org.*, No. 04-35574-BJH-11, 2007 WL 2964255, at *6, n.6 (statements regarding another person's knowledge not admissible); *see also Carey v. Beans*, 500 F. Supp. 580, 583 (E.D. Pa. 1980) ("Interpreting [rule 56(c)], courts have held that affidavits must be made upon personal knowledge, devoid of hearsay, conclusory language and statements which purport to examine thoughts as well as actions. Affidavits speculating as to motivations but containing no factual support do not conform to the rule, and statements prefaced by the phrases, 'I believe' or 'upon information and belief' or those made upon an 'understanding', are properly subject to a motion to strike. Moreover, affidavits which contain conclusions of law, ultimate facts, assertions, arguments and inferences derived from the opposing party's affidavits similarly may be 'disregarded.'").

Finally, Nijjar disputes Schott's contention that Nijjar was required to provide a $300,000 down payment outside of closing. Nijjar states that he understood that the lender draw schedule

---

[2] Nijjar's statement regarding what IndyMac *did* (as opposed to what IndyMac may have *said*), however, is not hearsay. *See* Fed. R. Evid. 801 & Advisory Committee note (a) ("The effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. The key to the definition is that nothing is an assertion unless intended to be one."); *United States v. Abou-Saada*, 785 F.2d 1, 8 (1st Cir. 1986) ("The Federal Rules of Evidence do not consider third party conduct hearsay, however, unless it was intended as a statement.").

governed the terms of the draw requests. He further asserts that the settlement statement at closing did not provide for any such $300,000 payment. Nijjar maintains that such a payment would have violated the loan covenants with IndyMay and would have directly contravened the funds disclosed on the settlement statement. As noted above, evidence regarding the alleged $300,000 down payment is relevant to Schott's counterclaims, but does not speak to Nijjar's claims against Schott. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Innovative Sales LLC v. Northwood Mfg.*, 2008 U.S. App. LEXIS 16930, at *5 (5th Cir. Aug. 6, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202(1986)).

In short, Nijjar argues that Schott fraudulently induced Nijjar to obtain loan approval with the full knowledge that the costs of completing the development project would exceed the loan proceeds. Nijjar opposes Schott's motion for summary judgment on Nijjar's section 523(a) claims, maintaining that numerous fact issues exist regarding Schott's alleged misrepresentations. Nijjar asserts that the misrepresentations include: 1) "Schott misrepresented that the development of the Property would be in accordance with the original specifications as referenced in the appraisal and other documents;" and 2) "Schott misrepresented the construction costs would not exceed the loan amount with IndyMac (the loan amount of approximately $1,000,000 after the payment of $685,000 for the purchase of the lot). At the very least, once the construction costs were exceeded, Schott was either unwilling or unable to tender the additional funds required in excess of the construction loan proceeds." (Resp., p. 12.) Nijjar maintains that summary judgment is inappropriate in light of the many factual questions that remain regarding Schott's knowledge, intent and duty to disclose in connection with the development agreement.

4.  Schott's Reply to Nijjar's Response to the Motion for Summary Judgment

Schott filed a reply to Nijjar's response, arguing, once again, that no genuine issue of material fact exists with respect to Nijjar's section 523(a)(2)(A) and (a)(6) claims. Schott maintains that Nijjar has failed to provide any evidence of the alleged specifications agreed to in advance by the parties. Schott asserts that Nijjar has admitted in his discovery responses that, in fact, no specifications were attached to the contract. Schott further maintains that Nijjar has failed to provide any evidence to establish that Schott had a duty to disclose the existence of the easement or that Schott even knew prior to closing the impact the easement would have on construction costs. Schott asserts that that Nijjar has also failed to provide any evidence to support his contention that Schott was intimately familiar with the property in question. Finally, Schott asserts that Nijjar has failed to provide any evidence to establish that Nijjar's lender approved the construction in accordance with certain specifications. Schott provides additional evidence in the form of affidavits, the original budget for the project, and a prior appraisal of the property performed for a different buyer in support of the arguments made in his reply.

5.  Nijjar's Surreply and Schott's Motion to Strike Surreply

Nijjar filed a surreply to Schott's reply in which Nijjar introduces new evidence in the form of a warranty deed deeding the property located at 6401 West Courtyard to Schott. Nijjar maintains that this new evidence supports his original argument that Schott was intimately familiar with 6403 West Courtyard—the property that is the subject of this dispute—and that he was aware of the easement on Nijjar's property. In addition, Nijjar claims that Schott agreed, through the terms of the warranty deed, to increase the size of the drainage easement on 6401, "in order to alter a drainage easement on the 6403 property." According to Nijjar, this constitutes a conflict of interest, because, "Schott was incentivized to minimize or conceal his knowledge of the drainage easement and its potential impact on the 6403 Property . . . so as not to adversely affect the 6401 property owned by Schott." (Surreply, pp. 2-3.) As an alternative to his surreply, Nijjar requests leave to file the special warranty deed as a supplemental exhibit to the summary judgment record.

Schott filed a motion to strike the surreply and an objection to Nijjar's motion for leave to supplement the summary judgment record. In support of both the motion to strike and the objection to motion for leave Schott argues the following: (1) the surreply is untimely because Nijjar seeks to introduce evidence that has been in the public records since before Nijjar closed on the subject property; (2) the surreply does not address any new issues that could not have been raised in Nijjar's response to the motion for summary judgment; and (3) in alleging that Schott had a conflict of interest, the surreply asserts a new theory in support of liability for which there is no evidence in the special warranty deed.

The court will grant Schott's motion to strike the surreply because the surreply was not filed in accordance with the Local Rules, it does not respond to the new evidence introduced in Schott's reply, and Nijjar provides no explanation as to why the evidence and corresponding argument could not have been raised prior to the surreply.

The Federal Rules of Civil Procedure do not explicitly authorize the filing of surreplies. *See* FED. R. CIV. P. 56. The local rules for the Western District of Texas provide that absent leave of the court, no further submissions beyond a motion, response to a motion, and reply to a response, are allowed. *See* Local Rule CV-7. *See also Albo v. Suzuki Motor Corp.*, 2008 U.S. Dist. LEXIS 62913, at *4 (W.D. Texas July 2, 2008). Procedural deficiencies aside, as stated by the district court for the Northern District of Texas, "[a] sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage." *Murray v. TXU Corp.*, 2005 U.S. Dist. LEXIS 10298, at *13 (N.D. Tex. May 27, 2005) (denying plaintiff's motion to strike defendant's reply, and also denying plaintiff's request to file surreply, because reply did not raise any new arguments that needed to be addressed by a surreply). "Surreplies, and any other filing that serves the purpose or has the

effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. June 8, 2001). They are generally reserved for exceptional circumstances. *Id.*

Here, Nijjar did not request leave from the court pursuant to Local Rule 7 to file his surreply. Nonetheless, even if the court disregards the Rule 7 violation, the motion to strike the surreply should still be granted. While Schott's reply does, in fact, introduce new evidence in support of Schott's summary judgment arguments, Nijjar's surreply does not actually address any of this new evidence. Schott's reply does not include any new evidence with respect to Schott's knowledge of the easement or his familiarity with the neighborhood; Nijjar's surreply, on the other hand, seeks to introduce new evidence in support of that issue only. Additionally, Nijjar's surreply attempts to raise a new argument regarding Schott's alleged conflict of interest and his concomitant desire to conceal the easement. Because Nijjar's surreply does not respond to the new evidence raised in Schott's reply, and because Nijjar's surreply actually seeks to introduce a new argument in support of Nijjar's assertion that Schott was aware of the impact the easement would have on the project, the surreply should be stricken. *See Newby v. Enron Corp. (In re Enron Corp. Secs)*, 465 F. Supp. 2d 687, 691 (S.D. Tex. 2006) (noting that allowing surreplies "will cause no prejudice as long as the surreplies respond to previous briefs and do not raise new legal arguments"). Furthermore, Nijjar does not explain why the new evidence in his surreply could not have been introduced in his response to Schott's motion for summary judgment. The warranty deed has been in the public records since before Nijjar purchased the property at 6403 West Courtyard. As such, Nijjar could have used it in support of his response to the motion for summary judgment. Nijjar offers no special circumstances that prevented him from introducing this document earlier in this litigation. Nijjar's untimely attempt to add the evidence is therefore rejected. *See Kozak v. Medtronic, Inc.*, 2006 U.S. Dist. LEXIS 6269, at *13 (S.D. Tex. Jan. 31, 2006) (granting motion to strike surreply due, among other things, to plaintiff's failure to "offer any explanation as to why the arguments made therein could not have been raised in his response").

Finally, it is worth noting that striking Nijjar's surreply will not prejudice Nijjar. As discussed below, even without considering Nijjar's surreply, the summary judgment record reveals sufficient issues of material fact in connection with Nijjar's section 523(a) claims to preclude summary judgment in Schott's favor. For this reason the court will also deny Nijjar's motion for leave to file the warranty deed as a supplement to the summary judgment record as moot. *See Klein v. O'Neal, Inc.*, 2008 U.S. Dist. LEXIS 41762, at *5 n. 1 (N.D. Tex. May 22, 2008) (denying plaintiff's motion for leave to supplement the summary judgment record as moot because "the proffered evidence would not affect the court's analysis").

*Discussion*

1. <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings. The moving party bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). 'An issue is material if its resolution could affect the outcome of the action.' *Weeks Marine, Inc. v. Firema's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party cannot meet its summary judgment burden "based on conclusory 'bald assertions of ultimate facts.'" *T.D. Farrell Constr., Inc. v. Schreiber*, 2008 U.S. Dist. LEXIS 89438, at *24 (S.D. Tex. Nov. 3, 2008) (quoting *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 304 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). Furthermore, "the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence[;] and [i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. Tex. 2000).

1. Section 523(a)(2)(A)

Section 523(a)(2)(A) provides, that a debt will not be discharged in bankruptcy if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent

that it was "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). "A creditor must prove its claim of nondischargeability by a preponderance of the evidence." *Jacobson v. Ormsby (In re Jacobson)*, 2007 U.S. App. LEXIS 17844, at *5 (5th Cir. July 26, 2007). A section 523(a)(2)(A) cause of action for fraud will exist

> when a debtor makes promises of current or future action which, at the time they were made, he had no intention of fulfilling. In order to succeed on his legal theory, the objecting party must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained losses as a proximate result of the representations.

*Ragupathi v. Bairrington (In re Bairrington)*, 183 B.R. 754, 757 (Bankr. W.D. Tex. 1995) (citing *In re Bercier*, 934 F.2d 689 (5th Cir. 1991)). To establish "false pretenses" or "false representations" under section 523(a)(2)(A) "the creditor must show '(1) [a] knowing and fraudulent falsehood [], (2) describing past or current facts, (3) that [was] relied upon by the other party[].[']" *Jacobson v. Ormsby (In re Jacobson)*, 2007 U.S. App. LEXIS 17844, at *5 (5th Cir. July 26, 2007) (alterations in original) (quoting *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292-93 (5th Cir. 1995)). The addition of "actual fraud" to section 523(a)(2)(A) in 1978 did not change the existing case law requiring a creditor to show actual or positive fraud; rather it was merely meant to clarify existing case law on the limited scope of the fraud exception to discharge. *See Recoveredge, LP v. Pentecost*, 44 F.3d 1284, 1293, n. 16 (5th Cir. 1995) (citing the discussion in 3 COLLIER ON BANKRUPTCY, ¶ 523.08[5] at 523-58 regarding the addition of "actual fraud" to section 523(a)(2)(A)). While some courts within the Fifth Circuit continue to distinguish between section 523(a)(2) claims for "actual fraud" and those for false pretenses/false representations, *Turbo Aleae Invs., Inc. v. Borschow (In re Borschow)*, 2011 Bankr. LEXIS 1332, at *44 (Bankr. W.D. Tex. Apr. 8, 2011), in *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, the Fifth Circuit recited the above-described five part test as the test applicable to section 523(a)(2)(A) claims generally, without distinguishing between the "actual fraud" and false pretenses/false representations prongs. 406 F.3d 367, 372 (5th Cir. 2005). In any event, the elements required for each prong overlap, and both tests require a misrepresentation and reliance.

The failure to disclose a material fact when one has a duty to do so is sufficient to establish non-dischargeability for fraud under section 523(a)(2)(A). *See AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 404 (5th Cir. 2001) ("When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an overt act is not required."); *In re McMullen*, 2004 Bankr. LEXIS 2558, at *16-17 (Bankr. N.D. Tex. July 15, 2004) ("A 'finding of fraud does not require an affirmative statement … [it] may be predicated on a failure to disclose [a] material fact … [C]ourts have overwhelmingly held that a debtor's silence regarding material fact can constitute a false representation actionable under section

523(a)(2)(A).") (quoting *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216 (3d Cir. 1997)). Courts examine the debtor's knowledge and intent when determining whether the debtor had a duty to disclose a particular fact. *See Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367 (5th Cir. 2005) (affirming bankruptcy court's finding, which had relied on debtor's testimony regarding his knowledge and intent, that creditor had not met its burden under section 523(a)(2)(A) where debtor failed to disclose mortgage he honestly but mistakenly believed had been extinguished and failed to disclose a claim that he honestly believed would not affect the creditor's mortgage).

Regarding the intent requirement under § 523(a)(2)(A), the Fifth Circuit has reiterated that "[a] creditor must prove the debtor's intent to deceive in order to obtain a non-dischargeability judgment under [] § 523(a)(2)(A)." *Friendly Fin. Service - Eastgate v. Dorsey (In re Dorsey)*, 505 F.3d 395, 399 (5th Cir. 2007). In other words, actual fraud, as opposed to constructive fraud, is necessary. The Fifth Circuit has further articulated that section 523(a)(2)(A) excepts from discharge "debts obtained by frauds involving 'moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.'" *In re Acosta*, 406 F.3d at 372 (*citing In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992)). The intent to deceive "may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation.'" *Id.* (*citing In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995), *citing In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994).). "Nevertheless, an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive... Thus, a 'dumb but honest' defendant does not have scienter." *Id.* (citations omitted).

Regarding the element of reliance, the Fifth Circuit does not require a creditor's reliance to be 'reasonable' under section 523(a)(2)(A). Instead, § 523(a)(2)(A) "requires justifiable, but not reasonable, reliance." *In re Jacobson*, 2007 U.S. App. LEXIS 17844, at *5. *Moss v. Littleton*, 2002 U.S. Dist. LEXIS 18137, at *8 n. 2 (N.D. Tex. Sept. 26, 2002) (citation omitted). "Justifiable reliance is a less exacting standard than reasonable reliance. Reliance on a representation is justifiable if its falsity is not ascertainable upon a cursory examination or investigation." *Jacobson v. Ormsby (In re Jacobson)*, 2007 U.S. Dist. LEXIS 40686, at *35 (W.D. Tex. June 5, 2007) *aff'd by In re Jacobson*, 2007 U.S. App. LEXIS 17844. Reliance under section 523(a)(2)(A) does not impose a duty to investigate upon a plaintiff unless there is something so amiss in the representation that the plaintiff would be effectively put on notice that something is wrong. *Moss v. Littleton*, 2002 U.S. Dist. LEXIS 18137, at *8-10.

Here, Schott has not met his burden of establishing the absence of any genuine issue of material fact with respect to Nijjar's non-dischargeability claims. Schott's own summary judgment evidence reveals several fact issues for trial, and in any event Nijjar has come forward with additional summary judgment evidence sufficient to raise questions of fact concerning the

19

assertions in Schott's summary judgment motion. In essence Schott argued that his summary judgment evidence established that Nijjar was aware of the existence and location of the easement when he entered into the agreement with Schott; that the home could have been built in accordance with the original specifications agreed to by the parties, which specifications did not include a pool; and that Schott, while perhaps aware of the existence of the easement, was not aware of, and thus did not fraudulently fail to disclose, the impact the easement might have on construction costs. Schott argued that his summary judgment evidence negated Nijjar's contention that Schott made misrepresentations or failed to disclose material facts. Schott's summary judgment arguments concern the misrepresentation and intent elements of Nijjar's section 523(a)(2)(A) and (a)(6) claims.

First, Schott's summary judgment evidence is not clear regarding whether Nijjar had actual knowledge of the existence and location of the easement when he entered into the construction contract with Schott. The survey of the property, the deed to the property, the Declaration of Covenants, and the title insurance policy all make reference to the easement with varying degrees of specificity. However, in Nijjar's discovery responses (Exhibit 23 to Mot. Sum. J.) Nijjar states that he did not receive a copy of the survey disclosing the location of the easement on the property until after closing. In any event, Nijjar's knowledge of the existence and location of the easement has little bearing on the ultimate question of whether Schott knew, and failed to disclose, that the easement would make construction of the home in accordance with the parties' agreement (whatever that agreement might have been) impossible.

Second, regarding Schott's argument that the home could have been built in accordance with the original specifications, and that those specifications did not include a pool, Schott relies, in part, on the construction contract, the original plans for the project, Nijjar's discovery responses, and the project budget to show that not only were no specifications actually attached to the construction contract, but that the budget that was attached to the contract, as well as the original plans for the project, did not contemplate the inclusion of a pool. The construction contract (Ex. 8 to Mot. Sum. J.) specifically states that the "Contractor hereby contract and agrees to construct a residential structure, substantially in accordance with the plans and specifications signed by Owner on the above described real property. Should there be any discrepancy between the plans and the specifications, the specifications shall govern." No such specifications are actually attached to the contract, but both parties appear to have been operating according to some form of specifications (the contents of which remain in dispute). (*See, e.g.,* Ex. 23 to Mot. Sum. J.) What Schott designates as the original plans for the project (Ex. 4 to Mot. Sum. J.), although difficult to read in the form in which they were uploaded, do not appear to include a pool. Additionally, the budget attached to the construction contract allocates zero dollars for the construction of a pool. (*See* Ex. 22 to Mot. Sum. J.) However, in a letter from David Owen to Nijjar (Ex. 4 to Schott's Reply), Owen states that the budget submitted to IndyMac was incorrect in that "cost [sic] were moved around to places they should not have been

as an attempt to font-load the first draw." Accordingly, the evidence is not clear as to what the correct budget actually included. Furthermore, in response to Schott's motion for summary judgment, Nijjar submitted an appraisal performed for Nijjar by FGM & Associates on February 24, 2007, shortly before closing; Nijjar claims that the specifications attached to this appraisal are the specifications originally agreed to by the parties. These specifications include a pool. (*See* Ex. A to Nijjar affidavit.) Nijjar also submitted a flyer for the property reflecting a pool that he received from Owen as evidence that the parties always contemplated the construction of a pool. (*See* Ex. B to Nijjar affidavit.)

Schott points out in his motion for summary judgment that the construction contract contains an integration/merger clause wherein the parties agree that the contract, plans, specifications and construction budget constitute the parties' entire agreement, and that the owner has not been induced to enter into the construction contract due to any representations or promises not contained in the agreement. (*See* Ex. 8 to Mot. Sum. J.) However, as noted above, no specifications were actually attached to the contract. Accordingly, Nijjar should be permitted to introduce evidence relating to the missing specifications referred to in and incorporated as part of the construction contract.[3] Schott argues that the "specifications" submitted by Nijjar were not the specifications contemplated by the parties. Schott asserts that the specifications were merely promotional materials for the project that had not even been provided by Schott. Schott also questions the authenticity of the promotional materials. The court will not assess the credibility of evidence submitted by the parties at the summary judgment stage. *See Johnson v. Diversicare Afton Oaks LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (noting that "[a] court reviewing a summary judgment motion must not weigh the evidence or evaluate the credibility of witnesses" but further noting that "[i]n a non-jury case, such as this one, 'a district court has somewhat greater discretion to consider what weight it will accord the evidence.'") (citations omitted). Here, considering the evidence in the light most favorable to Nijjar, the non-movant, the court concludes that genuine issues of material fact exist regarding the question of whether the parties' original agreement contemplated the construction of a pool.

Third, Schott argues that Nijjar produced no evidence establishing that Schott knew about and failed to disclose the impact the easement would have on the project's construction costs. Schott states in his affidavit that he (through Reaching New Heights) purchased the property adjacent to Nijjar's property in January, 2007, but that he had no knowledge of the easement on 6403 West Courtyard other than what was contained in the survey of the property. (*See* Ex. 3 to Mot. Sum. J.) Schott also states that he has never built any homes in that subdivision before and

---

[3] "[A]n unsigned paper may be incorporated by reference into a paper signed by the person to be charged. The language used is not important provided the document signed by the defendant plainly refers to another writing. The incorporated document, however, 'must be referenced by name.' An incorporated document becomes part of the single agreement." *Prime Tree & Landscaping Servs. v. Americon Servs. Co.*, 2011 Tex. App. LEXIS 1953, at *16-17 (Tex. App. Houston 1st Dist. Mar. 17, 2011) (internal citations and quotations omitted).

21

that the architect hired by Reaching New Heights designed a home, without a pool, that did not encroach upon the easement. (*Id.*) This evidence does not establish the absence of any genuine issue of material fact with respect to Schott's knowledge of whether the easement would pose problems in connection with the construction of a pool. Assuming the parties' agreement contemplated the construction of a pool (as noted above, questions of fact exist concerning this issue), then the fact that Schott knew about the easement (from the survey of the property) necessarily raises questions regarding whether Schott also knew about the impact the easement might have on construction costs. And that, in turn, raises questions about whether Schott had a duty to disclose this information, considering his relative expertise and Nijjar's reliance on that expertise. In short, genuine questions of material fact exist regarding what Schott did and did not know in connection with the easement and its potential impact on the construction costs of the project.

Finally, it is worth noting that, in the context of a fraud claim such as Nijjar's section 523(a)(2)(A) claim, issues involving a person's intent usually require a trial. This is because,

> [d]eterminations concerning a debtor's state of mind require a subjective assessment of the debtor's intent which often can only be made by the trier-of-fact after it has had the opportunity to assess the credibility and the demeanor of witnesses who testify at trial during both direct and cross examination.

*PNC Bank v. Laskey (In re Laskey)*, 2010 Bankr. LEXIS 3264, at *6 (Bankr. N.D. Ohio, Sept. 17, 2010). Summary judgment on issues of intent may be appropriate, however, "where the record of the case leaves no plausible honest explanation for the debtor's action." *Id.* Here, questions of fact certainly exist regarding Schott's intentions with respect to the real estate transaction at issue here. This dispute will have to be settled through a trial on the merits.

1. Section 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6); *Guerra & Moore Ltd., LLP v. Cantu (In re Cantu)*, 389 Fed. Appx. 342, 345 (5th Cir. 2010) (unpublished). The Supreme Court has concluded that the word "willful" in section 523(a)(6) "modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In *Kawaauhau*, the Supreme Court distinguished intentional torts—which the Court noted "generally require that the actor intend 'the consequences of an act,' not simply 'the act itself'"—from negligent or reckless torts, and concluded that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 61-64. The Fifth Circuit has articulated the Supreme Court's test as follows: "[t]he test for willful and malicious injury under § 523(a)(6), [] is condensed into

a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor." *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. Appx. 360, 361 (5th Cir. 2007). In distinguishing between "willful" and "malicious," the Fifth Circuit has stated that "[c]onduct may qualify as 'willful' for purposes of § 523(a)(6) only if the alleged injury itself is deliberate or intentional, not merely where there is a deliberate or intentional act that leads to the alleged injury. Conduct may qualify as 'malicious' if it is engaged in 'without just cause or excuse.'" *Rapid Settlements, LTD v. Shcolnik*, 2010 U.S. Dist. LEXIS 118792, at *8-9 (S.D. Tex. Nov. 8, 2010). Finally, it is worth noting that "[m]erely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful." Guerra *& Moore Ltd., LLP v. Cantu (In re Cantu)*, 389 Fed. Appx. 342, 345 (5th Cir. 2010) (unpublished decision).

In *Mann Bracken, LLP v. Powers (In re Powers)*, this court elaborated upon the objective prong of the Fifth Circuit's test for willful and malicious injury under section 523(a)(6). 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009). The court stated that,

> this prong should be understood as essentially evidentiary in nature and import, a kind of marker or 'badge of intent,'... In other words, objective substantial certainty as described by the [Fifth Circuit] is not actually another way to say 'reckless.'... A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff.

*Id.* Thus, it is clear that reckless disregard of one's duties is not enough for a debt to be deemed non-dischargeable pursuant to section 523(a)(6).

Here, for the same reasons discussed above, Schott has established the absence of any genuine issue of material fact regarding either his subjective intent or an objective substantial certainty that his conduct would harm Nijjar. While Schott's summary judgment evidence, including his affidavit, was probably sufficient to shift the burden to Nijjar to come forward with evidence in support of his section 523(a)(6) claim, Nijjar's responsive summary judgment evidence raised sufficient factual questions regarding Schott's knowledge, intent and duty to disclose to survive summary judgment. Furthermore, "the grant of summary judgment on discharge motions is ordinarily not granted since such motions usually involve questions of motive and intent, where material issues of fact might exist as to the debtor's motive." *T.D. Farrell Constr., Inc. v. Schreiber (In re Schreiber)*, 2008 U.S. Dist. LEXIS 89438, at *46 (S.D. Tex. Nov. 3, 2008) (denying cross-motions for summary judgment on plaintiff's section 523(a)(2) and (a)(6) claims because, given the debtor's conduct in light of the debtor's knowledge of the construction industry, material fact questions remained regarding the debtor's intent and motive).

23

### Conclusion and Order

For the foregoing reasons, it is hereby:

**ORDERED**, that Schott's Objection and Motion to Strike (Docket No. 14) is granted in part and denied in part as laid out in the decision above;

**ORDERED**, that Schott's Motion to Strike Surreply and Objection to Motion for Leave is granted; and

**ORDERED**, that Schott's Motion for Summary Judgment is denied. Genuine questions of material fact remain regarding Schott's knowledge, motive, intent and duty to disclose for Nijjar's section 523(a)(2)(A) and (a)(6) claims to survive summary judgment.

### ###